UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Edward Finley,                     :
                                   :
          Plaintiff,               :
                                   :
     v.                            :    Case No. 1:12-cv-162-jgm
                                   :
John Hersh, Leonard                :
Shapiro, and Ray LaMoria,          :
                                   :
          Defendants.              :

OPINION AND ORDER
(Docs. 8, 16, 23, 28)

Plaintiff Edward Finley was convicted in 1999 of
conspiring and attempting to rob a federally insured credit
union.  He brings the current action, *pro se*, against two now-
retired FBI agents and a police officer, claiming that false
testimony, witness intimidation, and withheld evidence denied
him a fair trial.  Pending before the Court are Defendants'
motions to dismiss and Finley's motion for summary judgment.
For the reasons set forth below, the motions to dismiss are
GRANTED, the motion for summary judgment is DENIED, and this
case is DISMISSED.

Factual Background

In March 1998, Finley was indicted on charges that he
conspired and attempted to rob a federally insured credit
union, and that he had distributed marijuana.  See United
States v. Finley, Case No. 1:98-cr-25 (Doc. 11.)  In February
1999, a jury convicted him of conspiring to rob a credit union

in violation of 18 U.S.C. § 371, and attempting to rob a credit union in violation of 18 U.S.C. § 2113(a).  Id. (Doc. 87.)  The United States Court of Appeals for the Second Circuit summarized the facts underlying the convictions as follows:

> The government's case centered on the testimony of Finley's co-conspirator, Daniel Colomb.  He testified that, in late 1997, after he and Finley had participated in several burglaries, Finley suggested that they rob the Vermont Grocer's Credit Union, and they took several preliminary steps to plan the robbery.  In addition, in January 1998, they burglarized a local residence and stole some marijuana.  Soon thereafter, Colomb was arrested on a shoplifting charge and agreed to cooperate with the police; he wore a recording device during several subsequent meetings with Finley.  During one of these meetings, Finley sold two ounces of marijuana to Colomb.  Later, during a series of meetings on March 5, 1998 concerning the robbery, defendant told Colomb he "wanted to do the job" but then changed his mind back and forth several times. He brought Colomb to the credit union and drove past it three times.  On the final pass, Colomb exited the car wearing a mask and entered the credit union. As Finley moved the car away, a police officer observed him wearing a hood.  He was arrested and gave a full confession admitting the robbery was his idea.
>
> Finley testified in his own defense.  He claimed, among other things, that the robbery was Colomb's idea; that he never agreed to rob the credit union; that he was unaware of what was going on while the robbery attempt was underway and did not expect Colomb to get out of the car; and that he was not wearing a hood as he pulled away from the credit union.

United States v. Finley, 205 F.3d 1325, 2000 WL 232166, at *1 (2d Cir. Feb. 18, 2000) (unpublished opinion).

2

On March 15, 1999, Finley's attorney filed a motion to set aside the verdict, arguing (1) that Defendant John Hersh, a now-retired FBI agent, attempted to intimidate Finley's wife, Kimberly Finley, to prevent her from testifying on behalf of her husband; (2) that Hersh had threatened another non-party witness with criminal prosecution if he refused to testify on behalf of the government; and (3) that the evidence against Finley was insufficient.  (Doc. 9-1 at 21-31.)  This Court denied the motion.  In July 1999, Finley was sentenced to 63 months in prison, to be followed by three years of supervised release.

Finley appealed his conviction and sentence, as well as the Court's ruling on the motion to set aside the verdict. The Second Circuit affirmed, and with respect to the motion to set aside the verdict, found that Finley had suffered no prejudice because his wife "actually testified, and [the other non-party witness] did not."  Finley, 2000 WL 232166, at *3.

In October 2001, Finley filed a petition for writ of coram nobis, claiming (1) that the government misled the grand jury by presenting perjured testimony, (2) that the court had no jurisdiction over the criminal case because there was no "nexus" between the federal government and the credit union, and (3) ineffective assistance of counsel because his attorney had failed to raise the "jurisdictional" issues.  Finley v.

United States, Case No. 1:01-cv-306 (Docs. 2, 3.)  The Court

denied the petition, finding it procedurally defective,

untimely, and ultimately without merit.  Id. (Doc. 18.)

On July 25, 2006, Finley filed a motion to vacate, set

aside or correct sentence pursuant to 28 U.S.C. § 2255.  The

motion argued, among other things, that in 2006, during an

interview with an investigator from the Federal Public

Defender's Office ("FPD"), Daniel Colomb revealed that he had

urged Finley to commit the robbery after being pressured by

Special Agent Hersh.  Colomb also alleged that after Finley's

trial, the FBI paid him between $1,000 and $1,500 for his

testimony.  Based upon this "newly discovered evidence,"

Finley argued that the government had violated his rights when

it failed to disclose the FBI's tactics prior to trial.

Finley also argued that trial counsel was ineffective for

failing to properly investigate the possibility of government

pressure on Colomb.

The Court denied the § 2255 motion, finding it both

untimely and without merit.  As to the merits, the Court

reviewed Colomb's trial testimony and concluded that his

statements to the investigator in 2006 were not materially

different from his testimony at trial with respect to any

pressure and/or incentives from the government.  Finley

appealed the Court's ruling, and the Second Circuit denied the

4

appeal, finding he had failed to show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  United States v. Finley, Case No. 1:98-cr-25 (Doc. 172.)

Finley now seeks relief under 42 U.S.C. § 1983, as well as various tort theories, claiming that "the Government failed to provide me with a fair trial by fabricating evidence and withholding exculpatory evidence."  (Doc. 4 at 1.) Specifically, he claims Special Agent Hersh committed perjury before the grand jury and at trial, withheld evidence from the prosecutor, and intimidated the prosecution's key witness. The two other Defendants, Special Agent Shapiro[1] and Rutland police officer LaMoria, were allegedly aware of Hersh's conduct and failed to disclose it.  All Defendants have moved to dismiss on various grounds, including timeliness and failure to state a claim.  Finley has responded with a motion for summary judgment.

<u>Discussion</u>

I.  <u>Motion to Dismiss Standards</u>

Defendants' motions to dismiss are submitted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under

---

[1]   The Complaint names "Leonard" Shapiro as a Defendant. The government informs the Court that the agent who worked on Finley's case with Special Agent Hersh was Special Agent Lionel Shapiro.

5

Federal Rule of Civil Procedure Rule 12(b)(1), a claim may be
dismissed for lack of subject matter jurisdiction.  Makarova
v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is
properly dismissed for lack of subject matter jurisdiction
under Rule 12(b)(1) when the district court lacks the
statutory or constitutional power to adjudicate it.").  In
reviewing a motion to dismiss under Rule 12(b)(1), the Court
must accept as true all material factual allegations in the
Complaint, but is not required to draw all reasonable
inferences in the plaintiff's favor.  See J.S. v. Attica Cent.
Schs., 386 F.3d 107, 110 (2d Cir. 2004).  Rather, a plaintiff
asserting subject matter jurisdiction has the burden of
proving by a preponderance of the evidence that subject matter
exists.

     In deciding a Rule 12(b)(6) motion to dismiss, the Court
applies a "plausibility standard," which is guided by "[t]wo
working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir.
2009).  First, the Court must again accept all allegations in
a plaintiff's complaint as true, although this "tenet" is
inapplicable to legal conclusions, and "[t]hreadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  Iqbal, 556 U.S. at
678; accord Harris, 572 F.3d at 72.  Second, only complaints

that state a "plausible claim for relief" can survive a Rule
12(b)(6) motion to dismiss.  <u>Iqbal</u>, 556 U.S. at 679.
Determining whether a complaint does so is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense."  <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at
72.

II.  <u>Defendant LaMoria's Motion to Dismiss</u>

     The first motion before the Court is that of Officer
LaMoria.  (Doc. 8.)  The sole allegation against LaMoria is
that he "was aware of the Hersh crime and did nothing to stop
it, or expose it at trial."  (Doc. 4 at 3.)  LaMoria argues
that the Complaint, which contains virtually no underlying
factual information about Finley's criminal case or Hersh's
alleged misconduct, is conclusory and thus subject to
dismissal.  LaMoria also contends that the Complaint is
untimely, urging the Court to take judicial notice of Finley's
1999 conviction, and arguing that any cause of action arose at
that time.

     Apparently in response to LaMoria's motion to dismiss,
Finley filed with the Court a 68-page addendum that includes
documents relating to his criminal case.  (Doc. 9-1.)  Among
those documents are two references to LaMoria: first, that
Colomb called LaMoria after being approached by the FPD in
2006 but LaMoria did not return the call; and second, that

LaMoria had been Colomb's initial contact but "did not feel it was right so he got out of it totally." Id. at 2, 3. LaMoria argues in reply that these facts "in effect acknowledge[] the complete absence of wrongdoing on the part of Defendant LaMoria." (Doc. 18 at 2.)

The Court first addresses the timeliness question. Federal courts borrow the state law personal injury statute of limitations period for purposes of Section 1983 actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985). In Vermont, the applicable statute of limitations for personal injuries and tort claims is three years. 12 V.S.A. § 512(4). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his Section 1983 civil rights action or state law tort claims within three years of the accrual of each cause of action.

Federal law governs the question of when a section 1983 claim accrues. Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999) (citing Morse v. Univ. of Vt., 973 F.2d 122, 125 (2d Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. (internal quotation marks omitted). Although federal law determines when a section 1983 claim accrues,

state law determines whether the limitations period has been tolled.  See Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 1997).

Finley submits that the statute of limitations tolled while he was in prison, and notes that after his release he was prohibited from contacting Colomb.  This Court has previously acknowledged that a Vermont statutory tolling provision applies to inmates.  See Bain v. Cotton, 2009 WL 1660051, at *4 (D. Vt. June 12, 2009).  Specifically, Vermont's limitations statute provides that "[w]hen a person entitled to bring an action specified in this chapter is a minor, insane or imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed."  12 V.S.A. § 551(a).  The Court has also determined that tolling ceases once the inmate is released, and that re-incarceration does not give rise to additional tolling under the statute.  See Gilbeau v. Pallito, 2012 WL 2416719, at *7 (D. Vt. May 22, 2012), Report and Recommendation adopted by 2012 WL 2416654 (D. Vt. June 26, 2012).

In this case, the Complaint does not set forth the dates of Finley's incarceration.  Nonetheless, the Court takes judicial notice of the fact that Finley was sentenced in 1999 to approximately five years in prison.  See Fed. R. Evid. 201(b) (court may take judicial notice of a fact "that it is

either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (holding that in deciding Rule 12(b)(6) motions, courts may consider judicially noticeable facts).  Accordingly, if Finley's causes of action accrued at trial, his limitations period likely tolled, at most, through 2004, after which he had three years to bring his Section 1983 and tort claims.

In 2007, the Court considered the question of accrual in the context of Finley's Section 2255 proceeding.  In that ruling, the Court found:

> there was evidence presented at trial showing (1) that Colomb had been encouraged by law enforcement to assist Finley in criminal conduct, and (2) that Special Agent Hersh had applied pressure on potential witnesses.  In his trial testimony, Colomb acknowledged that his role in the crime, as well as his role at trial, constituted part of a deal with the prosecution.
>
> > COUNSEL: You've come into this courtroom, Mr. Colomb, and it's part of sort of an agreement you made with the prosecution. Isn't that right?
> >
> > COLOMB: That's correct.
> >
> > COUNSEL: You would help the police arrest [Finley].  In exchange for that, you wanted some benefits.
> >
> > COLOMB: Correct.

It was also revealed at trial that Colomb had been working with Hersh, and that Hersh had allegedly tried to intimidate two other trial witnesses.

United States v. Finley, 2007 WL 1732115, at *4 (D. Vt. June 13, 2007) (internal record citations omitted).  Based upon these facts, the Court found that Finley's Section 2255 filing, although submitted within one year of Colomb's 2006 interview with the investigator from the FPD, was untimely, as he "'could have' discovered 'the facts supporting the claims or claims presented'" within the initial limitations period. Id. (quoting 28 U.S.C. § 2255(f)(4)).

The Court reaches the same conclusion here.  Hersh's alleged conduct was the subject of trial testimony, and Finley thus knew or had reason to know of the injury "which is the basis of his action."  Covington, 171 F.3d at 121.  Indeed, Finley himself concedes that "[t]he cause of action against LaMoria and the others accrued once their wrongful actions/inactions resulted in a guilty verdict against petitioner."  (Doc. 22 at 2.)  Finley's Section 1983 actions and tort claims against LaMoria are therefore untimely.

The Court also considers equitable tolling.  The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'"  In re U.S. Lines, Inc., 318 F.3d 432, 436 (2d Cir. 2003) (citation

11

omitted).  Typically, a statute of limitations is equitably tolled when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired.  See Pearl v. City of Long Beach, 296 F.3d 76, 82–83 (2d Cir. 2002);  see also Town of Victory v. State, 814 A.2d 369, 372 (Vt. 2002) ("Courts apply the doctrine [of equitable tolling] only when the defendant actively misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit, or the plaintiff timely raised the precise claim in the wrong forum.").  District courts also consider whether the plaintiff "(1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (citation omitted).  The plaintiff bears the burden of showing that he is entitled to equitable tolling.  See Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 37 (2d Cir. 2002).

Finley contends that "[a]s a *pro se* litigant I was led to believe that there was no time bar for filing a civil claim

pursuant to 42 U.S.C. § 1983." (Doc. 15 at 1.)[2] He also asserts that tolling commenced upon his incarceration in 1999. (Doc. 22 at 2.)  Finley further reports that upon his release from incarceration, he was prohibited from contacting Colomb, and was only able to investigate his claim after he was re-incarcerated and appointed counsel.

None of these allegations supports equitable tolling. First, Finley does not claim that it was LaMoria who "led [him] to believe" there was no limitations for a Section 1983 action.  See Pearl, 296 at 82-83.  Indeed, no Defendant is accused of providing such advice.  Furthermore, Finley does not claim that he was barred from approaching LaMoria, or other potential witnesses aside from Colomb, to inquire about Hersh's alleged misconduct.  Accordingly, as the Court concluded in Finley's habeas corpus proceeding, a reasonably diligent litigant would have discovered the claims prior to the expiration of the limitations period.  See Finley, 2007 WL 1732115, at *5.  The Court therefore finds that Finley has not carried his burden of showing the requisite "compelling circumstances" that would warrant equitable tolling, and his

---

[2]  Finley suggests that his belief arose out of a 2002 Court ruling dismissing a medical malpractice claim without prejudice.  See Finley v. United States, Case No. 1:01-cv-306 (Doc. 18 at 4.)  The Court's ruling did not make any statements about either a statute of limitations or tolling. Id.

claims are DISMISSED as untimely.  <u>In re U.S. Lines, Inc.</u>, 318 F.3d at 436.

Even assuming a timely filing, however, Finley has failed to state a claim for relief again LaMoria.  Rather than claiming that LaMoria aided Hersh's alleged efforts to corrupt the trial, Finley's exhibits suggest that LaMoria "got out of it totally."  (Doc. 9-1 at 2.)  And while Finley claims that LaMoria should have "expose[d]" Hersh's conduct at trial, the trial record cited above indicates that Hersh's alleged actions were the subject of trial testimony.  Accordingly, no injury can be attributed to LaMoria, his motion to dismiss (Doc. 8) is GRANTED, and the claims against him are DISMISSED.

III.  <u>Federal Defendants' Motions to Dismiss</u>

The remaining Defendants in the case are former Special Agents Hersh and Shapiro.  To the extent these Defendants are sued in their official capacities, the government has filed a Notice of Substitution, substituting the United States as the proper party, as well as the required certification from the United States Attorney, pursuant to 28 U.S.C. § 2679(d)(1).  The government has filed a separate motion to dismiss with respect to the claims against Hersh and Shapiro in their individual capacities.

14

A.   The United States' Motion to Dismiss

The United States first argues that Finley has not identified any basis for a waiver of its sovereign immunity. Sovereign immunity "shields the federal government and its agencies from suit" absent an express Congressional waiver. Diaz v. United States, 517 F.3d 608, 611 (2d Cir. 2008) (citing F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994)); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). This protection from suit offered by sovereign immunity is not just a ground for dismissal, but a jurisdictional bar. See, e.g., Meyer, 510 U.S. at 475. A plaintiff bears the burden of proving by a preponderance of the evidence that Congress has waived sovereign immunity. See, e.g., Chayoon v. Chao, 355 F.3d 141, 143 (2d Cir. 2004).

With respect to Finley's constitutional claims, "the United States simply has not rendered itself liable . . . for constitutional tort claims" for money damages. Meyer, 510 U.S. at 478. Under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), an individual may sue a federal official in his or her individual capacity for unconstitutional conduct. While Bivens authorizes suits against the responsible federal official, it

15

does authorize suits against the government itself.  <u>See</u>
<u>Norton v. United States</u>, 581 F.2d 390, 393 (4th Cir.), <u>cert.</u>
<u>denied</u>, 439 U.S. 1003 (1978).  Accordingly, "<u>Bivens</u>-type
actions against the United States are . . . routinely
dismissed for lack of subject matter jurisdiction." <u>Keene</u>
<u>Corp. v. United States</u>, 700 F.2d 836, 845 n.13 (2d Cir. 1983).

Finley does not specify what sort of relief he is
requesting.  If he is seeking damages for unconstitutional
conduct, sovereign immunity applies and this Court has no
jurisdiction over his claims against the United States.  <u>See</u>
<u>id.</u>  The government acknowledges that other forms of relief
may be sought under the Administrative Procedures Act, 5
U.S.C. §§ 701-06 ("APA"), although Finley does not assert any
such claim.  The APA "allows judicial review of final agency
decisions," <u>Cobell v. Norton</u>, 240 F.3d 1081, 1095 (D.C. Cir.
2001), and only applies where "no other adequate remedy in a
court" exists.  5 U.S.C. § 704.  Even assuming that the
alleged misconduct by Hersh and Shapiro constituted a final
agency decision, the habeas corpus statute provided Finely
with an adequate remedy.  <u>See</u>, <u>e.g.</u>, <u>Stone v. Holder</u>, 859 F.
Supp. 2d 48, 52, n.2 (D.D.C. 2012) (concluding that although
plaintiff had unsuccessfully pursued habeas corpus relief, his
APA claims were barred because the habeas corpus statute

"provides the appropriate remedy").  Relief is thus unavailable under the APA.

As to Finley's tort claims, his exclusive remedy for monetary damages against the United States is under the Federal Tort Claims Act, 28 U.S.C. § 2671-2680 ("FTCA").  See 28 U.S.C. § 2679(b)(1); Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991).  The FTCA requires a plaintiff to exhaust his administrative remedies prior to commencing a lawsuit.  See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  Before a district court can exercise jurisdiction over a plaintiff's FTCA claim, that plaintiff must first "plead and prove compliance" with the FTCA's exhaustion requirements.  In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987); see also Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).  This "procedural hurdle [of demonstrating exhaustion] applies equally to litigants with counsel and to those proceeding pro se," Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004), and failure to demonstrate exhaustion deprives the Court of jurisdiction.  See Keene Corp., 700 F.2d at 841 (requirement that a notice of claim be filed "is jurisdictional and cannot be waived"); see also Celestine v.

17

Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005).  Because Finley's pleadings do not establish exhaustion under the FTCA, the Court cannot exercise jurisdiction over any tort claims brought against the United States.

The government next argues that Finley's claims are untimely.  The general statute of limitations for civil claims brought against the United States is six years.  See 28 U.S.C. § 2401(a).  For tort claims, the limitations period is two years, or within "six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  See id. § 2401(b).

As discussed above, the Court finds, and Finley concedes, that his claims accrued upon his conviction.  Filing suit thirteen years later, with up to five years of tolling while Finley was serving his sentence, does not satisfy even the six-year limitations period.  With regard to any tort claims, there again is no showing of exhaustion at the agency level such that a six-month limitations period would apply.  Accordingly, Finley's claims against the United States are untimely, and its motion to dismiss (Doc. 16) is GRANTED.

B.   Individual Federal Defendants' Motion to Dismiss

The government has moved separately for dismissal of all claims against Hersh and Shapiro in their individual

18

capacities.  The government first argues that absolute witness immunity and prosecutorial immunity bar Finley's claims.  As to witness immunity, Finley claims that Hersh committed perjury before the grand jury and at trial.  The Supreme Court has held that law enforcement officers enjoy absolute immunity for their testimony as trial witnesses.  See Briscoe v. LaHue, 460 U.S. 325, 335-36 (1983).  This is true even for perjured testimonoy.  Id. at 342-43.  Similarly, in Rehberg v. Paulk, 132 S. Ct. 1497, 1505-09 (2012), the Supreme Court recently held that grand jury witnesses, including law enforcement officers, enjoy absolute immunity from liability arising out of their testimony.  Accordingly, all claims against Hersh based upon his trial and grand jury testimony are DISMISSED.

The government also submits that Hersh's alleged efforts to threaten and intimidate witnesses are protected by absolute prosecutorial immunity.  Prosecutorial immunity applies when "prosecutors, and person working under their direction . . . function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'"  Bernard v. Cnty. of Suffolk, 356 F.3d 495, 502-03 (2d Cir. 2004) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)).  Absolute immunity does not apply when prosecutors and others "perform investigative functions."  Id.

It has been held that "intimidating and coercing witnesses into changing their testimony is not advocatory. It is rather a misuse of investigative techniques. . . . [and] absolute immunity is not available." Moore v. Valder, 65 F.3d 189, 194 (D.C. Cir. 1995) (cited in Zahrey v. Coffey, 221 F.3d 342, 346-47 (2d Cir. 2000)); but see Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (finding that prosecutor who allegedly coerced witnesses to commit perjury at trial was absolutely immune). Here, the claim against Hersh is that he tried to coerce witnesses into either testifying for the government, or not testifying on Finley's behalf. It is not clear from the Complaint at what stage in the case Hersh engaged in such alleged misconduct, or whether he did so at the direction of prosecutors. Accordingly, the Court declines to apply prosecutorial immunity based upon this limited record.

In any event, Finley's claims against Hersh and Shapiro are untimely. As it does in Section 1983 cases, the Court looks to state law to determine the statute of limitations for a Bivens claim. See Wallace v. Kato, 549 U.S. 384, 395 (2007); Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998); Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987) (applying same statute of limitations to Bivens claims as applied to Section 1983 claims). That limitations period in Vermont is three years. 12 V.S.A. § 512(4). For any tort claims, the

limitations period under the FTCA is two years.  28 U.S.C. §
2401(b).

As discussed above, a cause of action accrues when "the
plaintiff knows or has reason to know of the injury which is
the basis of his action," see Morse, 973 F.2d at 125, and
Finley concedes that his cause of action accrued at the time
of his 1999 conviction.  (Doc. 22 at 1-2.)  While statutory
tolling would again apply, that tolling ended with Finley's
release after his initial period of incarceration.  See
Gilbeau, 2012 WL 2416719, at *7.  Furthermore, as discussed
previously, Finley has not carried his burden of demonstrating
grounds for equitable tolling.  Accordingly, this case, filed
thirteen years after Finley's conviction and approximately
eight years after the end of his sentence, is untimely.

The government further argues that Finley's claims are
barred by issue preclusion.  Issue preclusion prevents re-
litigation of an issue when: (1) the identical issue was
raised in a previous proceeding; (2) the issue was actually
litigated and decided in the previous proceeding; (3) the
party had a full and fair opportunity to litigate the issue;
and (4) the resolution of the issue was necessary to support a
valid and final judgment on the merits.  Ball v. A.O. Smith
Corp., 451 F.3d 66, 69 (2d Cir. 2006).

21

In this case, to the extent Finley is bringing a due process claim based upon governmental misconduct, that issue was decided on direct appeal.  Finley claimed on appeal that Special Agent Hersh had violated his rights when Hersh threatened potential witnesses.  The Second Circuit found that "Hersh's conduct did not violate Finley's due process rights and, in any event, resulted in no prejudice requiring reversal," as the alleged threats were ultimately unsuccessful.  Finley, 2000 WL 232166, at *3.

Claims of withheld evidence were also decided previously. In the course of his federal habeas corpus proceeding, Finley argued that the government "failed to disclose the full nature and extent of Colomb's history as a cooperating witness." Finley, 2007 WL 1732115, at *5 (record citation omitted).  The Court determined that there was no violation under Brady v. Maryland, 373 U.S. 83 (1963), since Colomb's role as a cooperating witness was fully revealed at trial.  The Court also found that Colomb's credibility was called into question through "extensive cross-examination," and that evidence of additional incentives for Colomb would have "added little to the jury's knowledge of Colomb's reliability generally." Finley, 2007 WL 1732115, at *7.  Accordingly, to the extent Finley's claim of withheld evidence relates to a deal between the government and Colomb, that issue has been decided and is

22

now precluded.  See Kulak v. City of New York, 88 F.3d 63, 71-
72 (2d Cir. 1996) (barring re-litigation in Section 1983
action of issues previously litigated and lost in state habeas
corpus proceeding); Menillo v. U.S. Dep't of Justice Bureau of
Prisons, 411 F. Supp. 2d 130 (D. Conn. 2006) (barring re-
litigation in Bivens action claims previously litigated and
lost in federal habeas corpus proceeding).

With respect to both issues, it is plain that Finley had
a full and fair opportunity to litigate his claims in the
prior proceedings, and that the courts' rulings were necessary
to support a valid judgment on the merits.  These claims are
therefore DISMISSED on the basis of issue preclusion.

For each of the reasons set forth above, the motion to
dismiss filed on behalf of Defendants Hersh and Shapiro in
their individual capacities (Doc. 23) is GRANTED.[3]

_____

[3]  The government also initially moved for dismissal
under Heck v. Humphrey, 512 U.S. 477 (1994).  However, in
light of the Second Circuit's ruling in Poventud v. City of
New York, 715 F.3d 57 (2d Cir. 2013), in which the circuit
declined to apply Heck where the plaintiff was not in custody,
the government has invited the Court "not [to] wade into the
waters of Heck and Poventud if one or more of these other
grounds for dismissal suffice."  (Doc. 31 at 2 n.1).  The
Court thus declines to address the government's arguments
under Heck.  The Court does find, however, that even without
Heck, Finley's claims of false arrest and malicious
prosecution are barred because he  was ultimately convicted of
the offenses for which he was arrested and prosecuted.  See
Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986); see also
Poventud, 715 F.3d 64 n.6 (acknowledging "an old common law
rule" that malicious prosecution claims "turn[] on the fact
that favorable termination is an element . . . ."); Siliski v.

IV.  Finley's Motion for Summary Judgment

In his reply to Defendants' motions to dismiss, Finley asserts that he is entitled to summary judgment "based on the evidence presented."  (Doc. 28 at 1.)  Because the Court has concluded that the Complaint must be dismissed, Finley's motion for summary judgment (Doc. 28) is DENIED as moot.

V.  Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.").  Leave to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is

_____

Allstate Ins. Co., 811 A.2d 148, 151 (Vt. 2002) (explaining that termination of the prior proceeding in the malicious prosecution claimant's favor is an essential element).

unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

Here, Finley's claims against all Defendants are untimely.  In addition, as to the United States, sovereign immunity bars the Court from exercising subject matter jurisdiction.  Finley's claims against Special Agent Hersh pertaining to false testimony are barred by absolute witness immunity, while allegations of witness intimidation and withheld evidence appear to be barred by issue preclusion. Finley's false arrest and malicious prosecution claims are barred because he was ultimately convicted.  Finally, to the extent Defendants Shapiro and LaMoria are accused of causing harm by failing to report Hersh's alleged misconduct, Hersh's actions were known by the defense, and thus presented to the jury, at Finley's criminal trial.

Given these many grounds for dismissal, the Court finds that leave to amend would be futile.  Even if Finley were able to overcome the timeliness issue through statutory or equitable tolling, Defendants' immunities and other bars to his claims would still apply.  Furthermore, Finley has already submitted an "Addendum" to his Complaint, to which he attached over sixty pages of "evidence" to "support [his] complaint." (Doc. 9 at 1.)  The Court has reviewed those filings, and notes that they are the substantially the same materials

described, and found to be unavailing, in prior rulings.  The Court therefore declines to grant leave to amend in this case.

<u>Conclusion</u>

For the reasons set forth above, Defendants' motions to dismiss (Docs. 8, 16, 23) are GRANTED, and Finley's motion for summary judgment (Doc. 28) is DENIED.  This case is DISMISSED.

Dated at Brattleboro, in the District of Vermont, this day of June, 2013.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

26